The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes and upon the briefs and argument of counsel. The appealing party has shown good ground to reconsider the evidence. The Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
* * * * * * * * * *
The Full Commission finds as facts and concludes as matters of law, the following, which were entered into by the parties as:
STIPULATIONS
1. The parties to this action are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between Kyle Beaver and defendant-employer from November 23, 1960 to November 1, 1984.
3. The City of Salisbury is qualified as self-insured.
4. The medical records of Kyle R. Beaver offered by both parties are authentic and admitted into evidence.
5. Kyle R. Beaver was diagnosed with a non-Hodgkin's malignant lymphoma femoral tumor in October of 1982.
6. Kyle R. Beaver died as a result of the non-Hodgkin's lymphoma on July 6, 1987.
7. The Salisbury Fire Department has had self-contained breathing apparatus since approximately 1953 or 1954.
8. That in the event the Court determines that the non-Hodgkin's lymphoma is a compensable occupational disease arising out of the employment, the plaintiff would be entitled to 400 weeks compensation, allowable funeral expenses, and such other compensation for out of pocket medical expenses and disability as the Court may determined from the competent evidence presented.
9. Plaintiff s medical records, death certificate, fire logs of the City of Salisbury, and annual reports of the Salisbury Fire Department are admitted into evidence.
10. The stipulation concerning the relative amounts contributed by defendant-employer and Kyle Beaver to the North Carolina Local Governmental Employees Retirement System, received by the Industrial Commission on May 14, 1996 is admitted into evidence as if fully set out herein.
* * * * * * * * * * *
The Full Commission rejects the findings of fact found by the Deputy Commissioner and makes the following:
FINDINGS OF FACT
1. The deceased employee, Kyle Beaver, was born October 1, 1932. He was married to Judy Beaver and they were living together at the time of his death. The deceased's wife, Judy Beaver, was dependent on Kyle Beaver for support. The deceased was employed by the City of Salisbury as a firefighter from November 23, 1960 until November 1, 1984. Mr. Beaver died on July 6, 1987 as a result of non-Hodgkin's lymphoma which he contracted while so employed.
2. Kyle Beaver's average weekly wage was $360.00, which yields a compensation rate of $240.01 per week.
3. During the period of time that the deceased was employed by defendant, he worked as a firefighter and Captain in the defendant city fire department. His position required him to fight fires, entering into buildings that were on fire and fighting the fire at its source. He also had to clean up various chemical and gas spills. During the majority of the time that Mr. Beaver was a firefighter with the City of Salisbury, every firefighters whether on duty or not, was required to respond to every fire that was being fought.
4. The fire logs and annual reports produced by the defendant and admitted into evidence were accurately kept. Great emphasis was made on the accuracy of these records as the City's fire rating was determined from these records. These records show the types of fires that Mr. Beaver was exposed to and the lack of use on any regular basis of respirator protection by firefighters with the City of Salisbury.
5. Mr. Beaver was an active Captain, fighting the fires himself and not merely supervising. At a dwelling fire, Captain Beaver was often the first into the dwelling and the last out. During his 24 years with the City of Salisbury, Captain Beaver would have been exposed to virtually every type of smoke from house fires, garbage fires, grass fires, factory fires, and car fires.
6. While employed by defendant, the deceased, who had relatively good health during the years he had worked for the defendant, became ill and was diagnosed with a non-Hodgkin's lymphoma femoral tumor in October of 1982. He died on July 6, 1987 as a direct result of said non-Hodgkin's lymphoma.
7. The deceased took disability retirement through the North Carolina Local Governmental Retirement System on November 1, 1984. He began collecting an initial benefit of $533.44 per month. He selected the 100% survivor benefit option; and his widow, Mrs. Beaver, currently receives a benefit of $799.98 per month. Both the deceased and his employer contributed to the disability retirement fund.
8. Dr. Selina Bendix, an expert in the field of toxicology who has a Ph.D. in Zoology and is a toxicologist, testified in behalf of plaintiff. Dr. Bendix testified, and the Full Commission finds as a fact, that the combustion found in the typical fires that a firefighter is exposed to increases the risk of contracting non-Hodgkin's lymphoma. Dr. Bendix further testified, and the Full Commission so finds, that Mr. Beaver's employment substantially contributed to the development of his lymphoma.
9. Dr. Bendix has rendered expert opinions in as many as 36 cases involving firefighters and cancers. She is a member of a committee of the National Fire Protection Association involving hazardous material response personnel.
10. Dr. Bendix testified that, based on her review of the fire logs and the types of fires that Captain Beaver would have been at during his 24 years as a fire fighter, his employment with the City of Salisbury placed him at an increased risk for developing his disease. Further, she testified that the occupational exposure, either caused or substantially contributed to the cause of Captain Beaver's lymphoma. In addition to this expert testimony, co-workers of Mr. Beaver during his 24 years as a fire fighter testified concerning Mr. Beaver's exposure to smoke and chemicals while fire fighting. Dr. Bendix testified to the carcinogenic nature of the smoke Mr. Beaver encountered. According to Mr. Beaver's co-workers, exposure to large amounts of smoke were routine for fire fighters such as Mr. Beaver. Dr. Bendix also testified to the absence of non-work related components of the disease's development. She testified that she saw "no evidence of genetic predisposition, excessive radiation, or unusual oral infections" in Mr. Beaver's medical records.
11. Dr. Melvin Reed, an oncologist from the State of Michigan, testified as an expert witness in behalf of defendant. Dr. Reed testified that he has treated hundreds of patients who had contracted non-Hodgkin's lymphoma disease. Dr. Reed testified that the occupation of firefighting is not a recognized risk factor for non-Hodgkin's lymphoma. The disease is a very common malignancy with approximately 20,000 new cases of such disease occurring in the United States each year. Dr. Reed testified that this disease is an ordinary disease of life to which all of us are exposed. Dr. Reed testified that there was no relation between the deceased's lymphoma and his occupation as a firefighters
12. In the instant case, the Full Commission accepts the opinion of Dr. Bendix, the toxologist who has spent most of her professional career studying the effects of toxins produced by fire upon the human body. While Dr. Reed has spent most of his professional career treating cancer patients, he has not personally made any scientific studies concerning the cause and effect of toxins released by fire and their effect on fire fighters. The Full Commission therefore does not accept the opinions of Dr. Reed.
In this case the Full Commission is in as good a position as the Deputy Commissioner in determining the credibility of the medical witnesses. Their testimony was by deposition. They did not testify "live" before the Deputy Commissioner.
13. Kyle Beaver's employment exposed him to a greater risk of contracting non-Hodgkin's lymphoma than members of the public generally and caused, or significantly contributed to, the development of said occupational disease.
14. Kyle Beaver died on July 16, 1987 as a result of non-Hodgkin's lymphoma which was an occupational disease within the meaning of the Act.
15. Decedent contributed as much or more than defendant to the retirement plan from which he received disability benefits from prior to his death.
* * * * * * * * * * *
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Whether a given illness falls within the definitions set out in G.S. § 97-53(13) is a mixed question of fact and law. Taylor v. JP Stevens Co., 300 N.C. 94,265 S.E.2d 144 (1980). This section in no way requires that the conditions of the employment be the exclusive cause of the disease in order to be compensable. Humphries v. Cone Mills Corp.,52 N.C. App. 612, 279 S.E.2d 56, cert. denied, 304 N.C. 390,285 S.E.2d 832 (1981). In determining the role that occupational exposure played in the development of a disease, the Commission may consider, in addition to expert testimony, factual circumstances which bear on the question of causation such as: (1) the nature and extent of the claimant's occupational exposure; (2) the presence or absence of other non-work related exposures and components which contributed to the disease's development; and (3) correlations between the claimant's work history and the development of the disease. Gay v. JP. Stevens Co., 79 N.C. App. 324, 339 S.E.2d 490 (1986). Absolute medical certainty is not required. Keel v. H V, Inc., 107 N.C. App. 536,421 S.E.2d 362 (1992).
2. Plaintiff has met her burden of proof. Kyle Beaver's employment exposed him to a greater risk of contracting non-Hodgkin's lymphoma than members of the public generally and caused, or significantly contributed to the development of said occupational disease. Kyle Beaver died on July 16, 1987 as a result of non-Hodgkin's lymphoma which was an occupational disease within the meaning of G.S. § 97-53(13).
3. As the result of the death of her husband being caused by a compensable occupational disease, and noting Stipulation (8), plaintiff is entitled to 400 weeks of compensation at $240.01 per week as the dependent spouse of deceased. G.S. § 97-38. Plaintiff is also entitled to have defendant reimburse her for funeral expenses, not to exceed $2,000.00, and for medical expenses incurred. Id.
4. Defendant is not entitled to a credit for benefits paid from decedent's retirement plan, as decedent contributed the same or more to the plan as did defendant. G.S. § 97-42.
* * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendant shall pay to plaintiff death benefits at the rate of $240.01 per week for 400 weeks, beginning as of the date of death of Kyle Beaver, July 6, 1987. All of these weekly payments having already accrued, defendant shall make these payments in a lump sum without commutation, subject to the attorneys' fee allowed below.
2. Defendant shall pay to plaintiff permanent total disability payments of $240.01 per week for each week deceased was out of work by reason of his occupational disease, or at least for the period I November 1984 through 6 July 1987. This amount having already accrued, it shall be paid in a lump sum without commutation, subject to interest and subject to attorneys fees as set forth below.
3. Defendant shall pay directly to plaintiff s attorney 25% of the lump sums awarded in paragraphs I and 2 above.
4. Defendant is not entitled to any credit for amounts paid to deceased by reason of the disability retirement to which both the deceased and the defendant contributed.
5. Defendant shall also pay plaintiff allowable funeral expenses and compensation for out of pocket medical expenses when the bills for same have been submitted to defendant and processed in accordance with procedures of the Industrial Commission.
6. Defendant shall pay the costs.
 S/ ________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ _________________ COY M. VANCE COMMISSIONER
DISSENTING:
S/ _________________ DIANNE C. SELLERS COMMISSIONER
Filed Date: 5/28/97